Antonio MELENDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–592–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1996.

David Garcia, Jerome Wesevich, Edinburg, for Appellant.

Theodore C. Hake, Asst. Criminal District Attorney, Rene Guerra, District & County Attorney, Traci A. Sellman, Asst. Criminal District Attorney, Hidalgo County Courthouse, Edinburg, for State.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

### OPINION ON MOTION FOR REHEARING

RODRIGUEZ, Justice.

On appellant's motion for rehearing, our opinion issued on July 11, 1996, is withdrawn and this opinion is substituted therefor.

Appellant, Antonio Melendez, was convicted of aggravated assault and sentenced to two years probation, plus a fine of $4,015.00, suspended during the term of probation. By a single point of error, appellant contends his right to a speedy trial was violated. We reverse and dismiss.

On the night of April 1, 1993, appellant, Benito Garcia, and Marco Llanas had been drinking at a bar when they decided to go to the shed where appellant lived. While Llanas slept in the van, a fight broke out between appellant and Garcia in the shed. Awakened by screams from the fight, appellant's landlord, Raul Navejar, went to the shed and saw appellant holding a machete to Garcia's neck. Garcia received several machete cuts to his hands.

Appellant was arrested in the early morning hours of April 2, 1993. Unable to post bail, appellant remained in jail for the next eighteen months until his trial on October 17, 1994.

By a single point of error, appellant complains that the trial court's denial of his right to a speedy trial was in contravention of both the federal and state constitutions [1] and article 1.05 of the Texas Code of Criminal Procedure.

■ To determine whether an accused has been denied the right to a speedy trial, the following balancing test, weighing the conduct of the prosecution and the accused, has been developed by the United States Supreme Court:

1) the length of the delay,

2) the reason for the delay,

3) the defendant's assertion of his speedy trial right, and

4) prejudice to the defendant from the delay.

*Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The four factors are neither a necessary nor a sufficient condition to the finding of a deprivation of the right to a speedy trial. *Id.* at 533, 92 S.Ct. at 2193. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. *Id.*

In *Barker,* the Supreme Court stated:

[T]he rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.

*Id.* at 530, 92 S.Ct. at 2192. Although the constitutional speedy trial rights of Texas and the United States are independent, Texas courts look to the federal courts in determining state constitutional rights. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *State v. Empak, Inc.,* 889 S.W.2d 618, 621 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Texas uses the *Barker* balancing test to determine whether

---

1. U.S. Const. amend. VI; Tex Const. art. I, § 10.

a defendant has been denied his state speedy trial right. *Harris,* 827 S.W.2d at 956.

## Length Of Delay

█ The delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of the remaining three factors is triggered. *Barker,* 407 U.S. at 531 n. 31, 92 S.Ct. at 2192 n. 31. The length of delay is measured from the time of arrest or formal accusation. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Harris,* 827 S.W.2d at 956. Most delays of eight months or longer are considered presumptively unreasonable and prejudicial. *Marion,* 404 U.S. at 313, 92 S.Ct. at 459; *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992); *Harris,* 827 S.W.2d at 956. The State concedes and we conclude that an eighteen month delay between time of arrest and trial is presumptively unreasonable and prejudicial. Thus, we review the ·remaining three factors of the *Barker* balancing test.

## Reason For Delay

█ It is the State's burden to establish an excuse for the delay. *Empak,* 889 S.W.2d at 624; *State v. Hernandez,* 830 S.W.2d 631, 634 (Tex.App.—San Antonio 1992, no pet.). The State's negligence, however innocent, militates against the State. *Empak,* 889 S.W.2d ·at 624; *Branscum v. State,* 750 S.W.2d 892, 895 (Tex.App.—Amarillo 1988, no pet.). If the record is silent or contains insufficient reasons to excuse the delay, we must presume that no valid reason for the delay existed. *Turner v. State,* 545 S.W.2d 133, 137 (Tex.Crim.App.1976).

The prosecutor, Nereyda Morales–Martinez, stated that although the case was set on the court's docket, it was continuously reset because it was not reached. It was passed over month after month. According to the State, this was the court's standard procedure and, therefore, the State was not responsible for the delay. Morales–Martinez had been ready to try the case whenever the court set it for trial, and, although she could have requested that the case be given priority, she would have been "subject just like any other attorney [to] the court telling me, you know, 'take your turn, whatever is next.' "

█ Even if we were to accept the State's argument that the delay was due to the trial court's overcrowded docket, such a reason does not exonerate the State. The problem of overcrowded courts should be weighted less heavily against the State, however, the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192.

█ In addition to testimony regarding the court's overcrowded docket, the prosecutor testified that "the *only* reason [this case did not get to trial] was that we were trying to work it out." (emphasis added). She attributed the eighteen month delay to representations made by Santos Maldonado, appellant's first court-appointed counsel, that appellant wanted to negotiate a plea. Morales–Martinez estimated that she spoke to Maldonado approximately once a month. This amounted to fifteen conversations which occurred when she "sometimes bumped into [Maldonado] in the hall and asked him about it 'cause it was a case that was not moving." Morales–Martinez testified that she and Maldonado "kept going back and forth. I would give him a recommendation, [Maldonado] would come back with something else, and we just kept discussing the case trying to work it out."

█ The record reflects that in December 1993, Maldonado requested that the court place the case on the trial docket because he was unable to negotiate a plea with the State. Although Morales–Martinez testified that she and Maldonado went "back and forth" during negotiations, she later admitted that she had made only one offer to appellant:

Q: Is there a recommendation for a plea, and has it been made in this file?

A: Yes. Recommendation that I gave him was ten years T.D.C. with an affirmative finding and restitution to the victim.

Q: Now, when was that plea offer made?

A: I don't know. It was towards the beginning. He didn't want to do T.D.C. time, I understand.

Q: Isn't it true, ma'am, that that has been the one and only plea offer in this case?

A: That's the only thing I have offered.

The offer was made approximately eighteen months before the trial. Appellant contends the testimony indicates an intentional delay by the State to coerce appellant to accept its offer of ten years. According to appellant, he had at all times maintained his innocence and wanted to have a trial. A prosecutor's intentional delay of a trial to gain some tactical advantage over a defendant or to harass him is improper. *Marion*, 404 U.S. at 325, 92 S.Ct. at 466.

We find the evidence of an overcrowded docket and of "plea negotiations" insufficient to establish an excuse for the State's delay. The second factor in the *Barker* balancing test therefore favors the appellant.

### Assertion Of Speedy Trial Right

 A defendant has no duty to bring himself to trial. *Barker*, 407 U.S. at 527, 92 S.Ct. at 2190. *Barker* places the primary burden on the courts and prosecutors to assure that cases are brought to trial. *Id.* at 529, 92 S.Ct. at 2191. Nevertheless, a defendant does have some responsibility to assert his right to a speedy trial. *Id.* at 528, 92 S.Ct. at 2191. An appellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial. *Harris*, 827 S.W.2d at 957.

 In his written waiver of arraignment on June 14, 1993, appellant asked the court to set a date for pretrial matters and for trial on the merits before a jury. The prosecutor testified that in December 1993, she received a copy of appellant's request that his case be put on the trial docket. Appellant requested the setting because the prosecutor and his attorney could not work out a plea.

Appellant testified that even before Maldonado was appointed as his attorney, he asked the guards at the jail how he could get a trial. They were unable to give him any information and told him to wait until some-

one called him. Once the court appointed Maldonado, appellant told him he wanted a trial each of the three times he spoke to him. Appellant attempted to contact Maldonado on numerous other occasions over a span of fifteen months but his calls were refused. Appellant's wife was also unsuccessful in her attempts to contact Maldonado.

Appellant then contacted Jerome Wesevich, an attorney at Texas Rural Legal Aid who accepted collect calls from the county jail. Appellant sought Wesevich's help in getting either a quick trial setting or another attorney. Wesevich testified at the pretrial hearing on appellant's motion to dismiss and confirmed that appellant repeatedly called him in June 1994 and "begged for a way to get to trial as quickly as possible." Wesevich advised appellant to write letters to the judge and to Maldonado expressing his concerns about getting his case to trial. The trial judge received appellant's letter on June 14, 1994, fourteen months after his arrest. In the letter, appellant informed the judge that he had been incarcerated since April 1993 and inquired about a trial date:

> "... please, give me some hope and take me to court soon, [i]f I have done something wrong punish me, and [i]f I'm in[n]ocent let me go, let the state present it's [sic] evidence against me and judge me."

Appellant received no response. Thereupon, appellant wrote to Wesevich claiming that "there is a 'lack of prosecution[,]' 'speedy trial,' and 'insufficient evidence.'" Consequently, Wesevich filed a motion to have Maldonado replaced with a new attorney. In September 1994, the court eventually appointed Wesevich and David Garcia as appellant's new attorneys. A month later, a motion to dismiss based on his right to a speedy trial was filed.

We find that appellant did all that he could, given his limited experience and knowledge of legal matters, to assert his right to a speedy trial. This factor also favors the appellant.

### Prejudice To The Defendant

 A defendant who invokes his right to a speedy trial is required to make

some showing that the delay has been prejudicial. *Chapman v. Evans*, 744 S.W.2d 133, 137 (Tex.Crim.App.1988); *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim.App. [Panel Op.] 1983). "Prejudice ... should be assessed in the light of the [following] interests ... which the speedy trial right was designed to protect[:] (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

▬▬ Proof of actual prejudice is not required; a defendant only needs to make some showing of prejudice caused by the delay. *Archie v. State*, 511 S.W.2d 942, 944 (Tex.Crim.App.1974); *Burgett v. State*, 865 S.W.2d 594, 598 (Tex.App.—Fort Worth 1993, pet. ref'd). If an accused makes a prima facie showing of prejudice, the State must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App.1973).

▬▬ The first protection provided by the speedy trial right is prevention of oppressive pretrial incarceration. It is undisputed that appellant remained in jail for eighteen months from the date of his arrest to the date of trial. The prejudicial nature of appellant's pretrial incarceration weighs heavily against the State in light of the protracted length of the incarceration and appellant's sentence of two years probation.

The second interest the speedy trial right was designed to protect is to minimize the accused's anxiety and concern. Appellant's letters reveal his great anxiety over the indefinite duration of his incarceration and the lack of information regarding the status of his case. Appellant further stated that he felt desperate, anxious, and depressed about his situation.

The final harm that may be produced as a result of an unreasonable delay is the possibility that the accused's defense will be impaired by dimming memories and loss of evidence. *Barker* recognizes that impairment of one's defense is the most difficult

form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *Traylor v. State*, 892 S.W.2d 447, 450 (Tex.App.—Beaumont 1995, pet. ref'd). Time can damage either side's case, and it is often impossible to determine which side has been prejudiced more severely. *Burgett*, 865 S.W.2d at 598. Appellant claims that all witnesses in the case suffered a loss of memory and cited to specific instances in the record. The State counters that appellant failed to explain how the references to memory loss impaired or prejudiced appellant's defense. The State argues that mere assertion of memory loss and its resulting prejudicial effect is insufficient to prove that appellant's defense was in fact impaired by the delay.

▬▬ Although the State contends that appellant did not provide evidence of actual prejudice, we find that appellant did not have such a burden. Actual proof of prejudice is not required; appellant only needs to make a prima facie showing of prejudice, and the State then has the burden of proving that appellant suffered no serious prejudice. *McKenzie*, 491 S.W.2d at 123. We have reviewed the specific instances of memory loss to which appellant cites and conclude that they were only minor lapses in memory. However, these instances are something we must take into account in the balancing process. *See Phillips*, 650 S.W.2d at 403 (though the court did not attach major significance to appellant's and wife's testimony asserting memory loss, it is something the court must take into account in the balancing process). Nevertheless, the State failed to refute appellant's prima facie showing of some prejudice in accordance with its burden to do so. *See State v. Perkins*, 911 S.W.2d 548, 554 (Tex.App.—Fort Worth 1995, no pet.) (once defendant made prima facie showing of prejudice through his testimony that but for fourteen month delay, he would have "remembered a lot more" and his lawyer's testimony that other witnesses had lost memory of the events, the burden shifted to the State to refute prejudice due to dimming memories, which the State failed to do).

The State does not challenge the oppressiveness of appellant's pretrial incarceration or that appellant felt anxious and depressed awaiting his day in court. As for the "impairment of defense" prong of the speedy trial prejudice factor, the State failed to meet its burden of contradicting appellant's assertions of dimming memories. Thus, we conclude that the final factor in the *Barker* balancing test, prejudice from the delay, also favors appellant.

Having determined that all of the *Barker* factors favor appellant, we hold that the trial court erred in finding that appellant's right to a speedy trial was not violated. We sustain appellant's sole point of error.

We reverse the judgment of the trial court and order this case dismissed.